**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

MONTE-CARLO AVIATION CORPORATION                                    PLAINTIFF

v.                                        No. 4:12CV00028 JLH

DASSAULT FALCON JET CORPORATION                                    DEFENDANT

**OPINION AND ORDER**

Monte-Carlo Aviation Corporation brings this action against Dassault Falcon Jet Corporation alleging common-law fraud and a violation of the Arkansas Deceptive Trade Practices Act based upon alleged false statements made in Monte-Carlo's previous action in this Court against Dassault Falcon and Dassault Aviation S.A. concerning a disputed aircraft.[1] Dassault Falcon has filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, arguing that both of Monte-Carlo's claims must be dismissed because they are predicated on an allegation that Dassault Falcon committed perjury in the previous action. For the following reasons, the motion will be denied.

Generally, "a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8(a)(2) does not require a complaint to contain detailed factual allegations, it does require a plaintiff to state the grounds of his entitlement to relief, which requires more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). In ruling on a motion to dismiss, the

---

[1] The previous action was *Monte Carlo Aviation Corp. v. Dassault Aviation S.A., and Dassault Falcon Jet Corp.*, No. 4:11CV00042-JLH.

Court must accept as true all factual allegations in the complaint and review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). The Court need not, however, accept as true legal conclusions, even those stated as though they are factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

Monte-Carlo is a British Virgin Islands corporation with its principal place of business in Monaco.[2] On March 7, 2005, it contracted with Dassault Aviation, a French corporation, to buy an airplane. After constructing the plane in France, Dassault Aviation flew it to Dassault Falcon's factory in Little Rock on April 6, 2010, to be customized.[3] Dassault Falcon, however, intentionally failed to customize the plane as required by the contract, and Monte-Carlo and Dassault Aviation spent the next several months in negotiations over the customized design specifications. Eventually, Dassault Aviation refused to deliver a plane conforming to Monte-Carlo's requests, and on November 22, 2010, it sent Monte-Carlo a letter declaring the contract to be terminated. On December 23, 2010, Dassault Falcon agreed in a written contract to sell the plane to a third party for a substantially larger price than Monte-Carlo had contracted to pay.

Monte-Carlo filed its complaint in the previous action on January 18, 2011, seeking to prevent Dassault Aviation and Dassault Falcon from removing the plane from Dassault Falcon's Little Rock

---

[2] This statement of facts is based on the allegations in the complaint in this action, which are assumed to be true for purposes of ruling on the present motion.

[3] Dassault Falcon, a Delaware corporation with its principal place of business in Little Rock, is a wholly owned subsidiary of Dassault Aviation.

facility. On the next day, the Court granted Monte-Carlo's request for a temporary restraining order and scheduled a hearing for January 26, 2011, to determine whether a preliminary injunction should be issued. On the day before the hearing, Dassault Falcon moved to be dismissed on the ground that it was a separate entity from Dassault Aviation and was not a party to the contract between Dassault Aviation and Monte-Carlo. Dassault Falcon's moving papers asserted that no facts had been alleged to show that it owned the aircraft or possessed the power to sell it. Thus, Dassault Falcon argued, it had no power to harm Monte-Carlo and should not be a party to the action. At the hearing, Dassault Falcon representative Dean Fagaly testified that while the plane was located at its Little Rock facility, Dassault Falcon had no ownership interest in the plane or contractual relationship with Monte-Carlo. Fagaly also testified that Dassault Falcon had not been given any instructions by Dassault Aviation to prepare the plane for delivery to a third party, nor was it aware of any such delivery. Dassault Falcon, Fagaly testified, would receive a minimum of forty-five days notice to get the plane ready for sale. Based on these representations, Monte-Carlo moved to dismiss Dassault Falcon voluntarily. On January 31, 2011, the Court granted the motion and dismissed Dassault Falcon without prejudice.[4] Dassault Falcon eventually delivered the plane to the third party.

Monte-Carlo alleges in the present action that Dassault Falcon committed fraud and violated the Arkansas Deceptive Trade Practices Act by willfully misrepresenting, both in testimony and in its moving papers, its relationship to and dealings with Dassault Aviation, the airplane, and the third-party purchaser, and by intentionally bringing about a breach of the contract. More specifically, Monte-Carlo alleges that Dassault Falcon intentionally and improperly caused Dassault Aviation to

---

[4] On February 1, 2011, the Court dismissed Monte-Carlo's claim against Dassault Aviation based on the doctrine of *forum non conveniens*.

3

breach the contract with Monte-Carlo, entered into an agreement dated December 23, 2010, to sell the aircraft to a third party, and then made intentionally false representations in the motion to dismiss and the testimony by Fagaly at the preliminary injunction. According to Monte-Carlo, it relied on those misrepresentations in dismissing Dassault Falcon, which then allowed Dassault Falcon to deliver the aircraft to the third party for a sum much greater than the purchase price Monte-Carlo agreed to pay.

Dassault Falcon's motion for judgment on the pleadings argues that, even if the allegations in the complaint are true, the complaint fails to state a claim upon which relief can be granted because persons are entitled to absolute immunity concerning in-court testimony and court filings.

It is well established that witnesses are absolutely immune from liability based on their testimony in a judicial proceeding. *See Johnson v. Dover*, 201 Ark. 175, 143 S.W.2d 1112, 1113 (1940) ("The general rule of the American cases is that statements made by a witness in the regular course of a judicial proceeding are absolutely privileged . . . whether they are false or malicious." (citation omitted)); *Briscoe v. LaHue*, 460 U.S. 325, 331-32, 103 S. Ct. 1108, 1113, 75 L. Ed. 2d 96 (1983) ("The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law . . . ." (footnote omitted)); *Mock v. Chicago, Rock Island & Pac. R.R. Co.*, 454 F.2d 131, 133 (8th Cir. 1972) ("[Absolute] privilege is generally applied to pertinent statements made in formal judicial proceedings . . . ."); *Robinson v. Mo. Pac. Transp. Co.*, 85 F. Supp. 235, 238 (W.D. Ark. 1949) (referencing "the generally accepted prohibition against civil actions for perjury"). This absolute immunity extends to an attorney's written and oral submissions to a court. *See Imbler v. Pachtman*, 424 U.S. 409, 426 n.23, 96 S. Ct. 984, 993 n.23, 47 L. Ed. 2d 128 (1976); *see also Pogue v. Cooper*, 284 Ark. 202,

205, 680 S.W.2d 698, 700 (1984) ("[U]nder the established law of Arkansas, statements in pleadings in judicial proceedings are absolutely privileged . . . even if the statements are false and made maliciously." (citing *Westridge v. Wright*, 466 F. Supp. 234, 237 (E.D. Ark. 1979)).

The parties do not dispute this general rule of absolute witness and attorney privilege. Rather, they dispute the scope of an exception to this rule.[5] Monte-Carlo cites *Morgan v. Graham*, 228 F.2d 625 (10th Cir. 1956), for the proposition that perjured testimony is not privileged if it can provide the basis for a fraud action, so long as all of the fraud elements are met.[6] Dassault Falcon acknowledges the exception to the absolute immunity rule but argues that it is more narrow than Monte-Carlo suggests. According to Dassault Falcon, a fraud claim cannot survive when the only fraudulent misrepresentations alleged also constitute perjury. *See, e.g., Anchor Wire Corp. v. Borst*, 277 A.D. 728, 729-30, 102 N.Y.S.2d 871 (N.Y. App. Div. 1951) (holding that a plaintiff must plead "actionable fraud over and beyond the false testimony"); *Levy v. Hayward*, 248 F.2d 152, 153 (D.C. Cir. 1957) (exception involves "fraudulent conduct beyond the giving of false testimony"). Thus, Dassault Falcon contends that all of the elements of the claim must be established apart from the perjury for the claim to survive. Because the only allegedly false representations made by Dassault

---

[5] Because the claims in this action arise under Arkansas law, Arkansas law governs. *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010). "If the [Arkansas Supreme Court] has not decided an issue we must attempt to predict how the [Arkansas Supreme Court] would resolve the issue, with decisions of intermediate state courts being persuasive authority." *Id.* (alterations in original) (quoting *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010)). Although the Arkansas Supreme Court has not addressed the issue, both parties assume that it would recognize the exception.

[6] In Arkansas, a plaintiff must allege the following five elements to maintain a fraud claim: (1) a false representation of material fact; (2) knowledge of the representation's falsity, or knowledge that there is insufficient information on which to base it; (3) intent to induce reliance on the representation; (4) justifiable reliance on the representation; and (5) damages resulting from the reliance. *Burgess v. French*, 100 Ark. App. 51, 54, 263 S.W.3d 578, 581 (2007).

5

Falcon were in testimony or papers filed with the Court, Dassault Falcon argues that the exception does not apply and that Monte-Carlo's fraud claims must be dismissed.

Dassault Falcon's argument has been rejected by a number of courts. *See, e.g., Morgan*, 228 F.2d at 627; *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 73-74 (Tenn. 2001) (holding that a fraud claim dependent for one of its elements on perjury can still survive under the exception); *FMC Techs., Inc. v. Edwards*, 464 F. Supp. 2d 1063 (W.D. Wash. 2006) (adopting *Brown*'s reasoning); *Frist v. Gallant*, 240 F. Supp. 827, 828-29 (W.D.S.C. 1965) ("Regardless of the general rule as to perjured testimony, if, under the alleged circumstances of this case, plaintiff is able to establish all the necessary elements of fraud and deceit, the court feels strongly that she should have her day in court to seek redress for such alleged wrongful conduct, as her cause of action is based on more than the mere giving of perjured testimony."). As the Western District of Washington explained in *FMC Technologies*:

> Because Plaintiffs' fraud claims cannot exist without relying on these misrepresentations that occurred in litigation, Defendants argue that the privilege bars the claims. . . . Defendants' logic is unconvincing for the same reasons that the *Brown* defendants' argument was unconvincing. The . . . exception operates to render otherwise privileged conduct actionable. The very impact of the . . . exception is to allow a suit based on litigation conduct where the scope of the second suit exceeds the scope of the first suit.

464 F. Supp. 2d at 1069.

Here, the complaint alleges a wrong that exceeds in scope the allegation that Dassault Falcon offered false testimony and made false statements in the previous action. Monte-Carlo alleges that Dassault Falcon intentionally induced Dassault Aviation to breach its contract so that it could sell the aircraft promised to Monte-Carlo to a third party for a substantially larger price. As one step in the process of accomplishing this wrong, Dassault Falcon knowingly made, according to the complaint,

6

misrepresentations in court, and Monte-Carlo justifiably relied on those misrepresentations in dismissing its claims against Dassault Falcon, which then allowed Dassault Falcon to deliver the aircraft to the third party. According to *Morgan, FMC Technologies*, *Brown*, and *Frist*, the fact that the misrepresentations were made in court does not mean that Monte-Carlo cannot rely upon them to establish an essential element of a fraud claim. Taking into account these misrepresentations, the complaint alleges all of the elements necessary for a fraud claim under Arkansas law. Monte-Carlo has stated a claim.

Dassault Falcon also argues that because the previous action was dismissed without prejudice as to it, any statements during that action cannot be used as a basis for a claim in these proceedings. "The effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.'" *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) (quoting *In re: Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir. 1977)). While that is undoubtedly a correct statement of the general rule regarding the legal effect of a motion to dismiss, that general rule does not mean that a court is totally without jurisdiction to take action relative to wrongdoing in litigation that has been voluntarily dismissed. Rather, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 2455, 110 L. Ed. 2d 359 (1990). A court can, for example, impose sanctions for criminal contempt and sanctions under Rule 11 after an action has been voluntarily dismissed. *Id.* at 395-97, 110 S. Ct. at 2455-56. Furthermore, in *Morgan*, which appears to be a seminal case on the exception under consideration here, the Tenth Circuit permitted recovery based on fraudulent

misrepresentations made in litigation prior to a voluntary dismissal. Monte-Carlo's claims are not barred by its previous voluntary dismissal.

Finally, Dassault Falcon argues that Monte-Carlo fails to state a claim under the Arkansas Deceptive Trade Practices Act because that act governs business, commerce, or trade, but not litigation practices. *See Illumination Station, Inc. v. Cook*, Civ. No. 07-3007, 2007 WL 4166215, at *3 (W.D. Ark. Nov. 20, 2007). While that, again, is a correct statement of the law, it does not apply here. Here, the complaint alleges that in the context of a commercial transaction Dassault Falcon engaged in a course of action that was designed to induce Dassault Aviation wrongfully to breach the contract with Monte-Carlo so that the aircraft could be sold to a third party for a substantially greater price. In the context of that commercial transaction, the complaint alleges that Dassault Falcon made fraudulent misrepresentations during litigation so that the sale of the aircraft to the third party would not be hindered. Those allegations suffice to make the connection to business, commerce, or trade that is required by the Arkansas Deceptive Trade Practices Act.

## CONCLUSION

For the reasons stated, Dassault Falcon's motion for judgment on the pleadings is DENIED. Document #26.

IT IS SO ORDERED this 12th day of September, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE